**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| MARK MILES<br>2478 Dunmore Ct.<br>Frederick, Maryland 21702<br><br>Plaintiff,<br><br>v.<br><br>MARYLAND-NATIONAL CAPITAL PARK<br>AND PLANNING COMMISSION,<br><u>Serve</u>:<br>Attn: Elizabeth Adams<br>6611 Kenilworth Avenue<br>Riverdale, MD 20737<br><br>and<br><br>STEPHANIE HARVEY, as an individual, and<br>in her official capacity,<br><u>Serve</u>: Stephanie Harvey<br>2821 Moores Plains Blvd.<br>Upper Marlboro, MD 20774<br><br>Defendants. | **Case No.:** _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND JURY DEMAND

**"[D]on't turn these texts over to [Internal Affairs] and get me fired for hate speech!"**

**"Because I'm racist…Fuck a misogynist too…or maybe a homophobe…Fuck it I check all the boxes[.]"**

*–Text Messages from Defendant Stephanie Harvey, Sergeant for the Defendant Maryland-National Capital Park and Planning Commission Park Police*

1

Plaintiff Mark Miles ("Officer Miles"), through the undersigned counsel, files this lawsuit against Defendants Maryland-National Capital Park and Planning Commission ("MNCPPC"), and Stephanie Harvey ("Defendant Harvey") (also collectively referred to herein as "Defendants"), and states as follows:

## NATURE OF THE ACTION

1.      This case seeks to recover damages and civil penalties arising from unlawful employment practices by Defendants against Officer Miles, including harassment, discrimination, and retaliation for reporting Defendants' discriminatory conduct in violation of the Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e-2(b) and 3(a); 42 U.S.C. § 1981; the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983; Md. Code, State Gov't § 20-606(a), (f); and/or Montgomery County Code § 27-19(a), (b) (c).

2.      Throughout the course of Officer Miles' employment with Defendant MNCPPC, Defendant Harvey and other white officers mocked, demeaned, ostracized, and humiliated Officer Miles because of his race (African American/Black).  Such offensive conduct included, but is not limited to referring to Officer Miles as "colored," talking about starting race wars, and discussing murdering Black Lives Matter protesters as discussed more fully below.

3.      Officer Miles endured a hostile work environment and suffered employment discrimination and retaliation throughout the duration of his employment with MNCPPC. Defendant Harvey acted at all times with actual malice, and therefore faces individual liability pursuant to 42 U.S.C. § 1981 and Md. Cts & Jud. Proc. Code § 5-301(b)(2).

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over all Counts pursuant to 28 U.S.C. § 1331 because those claims arise under the United States Constitution and laws of the United States.

5.     This Court has supplemental jurisdiction over Counts VIII to XI of this Complaint, which arise under the laws of Maryland, pursuant to 28 U.S.C. §1367(a), because the claims in Counts VIII-XI arise from a common set of operative facts with Counts I-VII. Thus, the claims are so related to the claims in the action within the original jurisdiction of this Court that they form part of the same case or controversy.

6.     Venue is proper in this Court pursuant to 42 U.S.C. Sec. 2000e-5(f) and 28 U.S.C. § 1391(b)(1)-(2) because all of the events, acts, and/or omissions giving rise to Officer Miles' claims occurred in the State of Maryland. Specifically, they occurred in Montgomery County, Maryland.

7.     The amount in controversy as set forth in the complaint exceeds $75,000.00 in an amount to be determined by the jury.

## PARTIES AND ENTITIES

8.     Plaintiff, Officer Mark Miles ("Officer Miles") is an adult African American male residing in Frederick County, Maryland.  At all relevant times Officer Miles was an employee of defendant Maryland-National Capital Park and Planning Commission in the Park Police Division.

9.     Defendant Maryland-National Capital Park and Planning Commission ("MNCPPC") is a local bi-county agency that administers parks and planning in Montgomery and Prince George's counties in Maryland.  MNCPPC employs over 50 employees and may sue and be sued.  The Maryland-National Capital Park Police ("Park Police") is a Division of MNCPPC, which at all times had supervisory authority over the Park Police.  *See* Md. Code, Land Use § 17-301, *et seq*.  The Park Police patrols the parks in both counties.  Defendant Maryland-National Capital Park and Planning Commission may be referred to as "MNCPPC" and/or "Park Police" interchangeably throughout this complaint.

10.     Defendant Stephanie Harvey ("Defendant Harvey") is an adult White female. Plaintiff is informed and believes and herein alleges that Defendant Harvey resides in Prince George's County, Maryland.  Plaintiff is informed and believes that Defendant Harvey was at all relevant times to this Complaint an employee of Defendant MNCPPC.  During relevant times as alleged below, Defendant Harvey was Plaintiff's direct supervisor, and the Sergeant in charge of Shift 5 in Montgomery County, for the Park Police during Plaintiff's employment.  As a sergeant, Defendant Harvey had supervisory authority over Plaintiff during all relevant times as alleged below, which included, but is not limited to the authority to take tangible employment actions against Plaintiff and other subordinate officers.  Such supervisory authority included, but is not limited to, disciplining subordinate officers including Plaintiff, as well as directing, supervising, controlling, and/or otherwise evaluating Plaintiff's work.

11.     Officer Miles files this lawsuit against MNCPPC, and against Defendant Harvey individually, and in her official capacity as a MNCPPC police sergeant.

## EXHAUSTION OF ADMINISTRATION REMEDIES

12.     Plaintiff exhausted his administrative remedies and commences this action more than 180 days after filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and within 90 days of receiving a Right to Sue Notice.

13.     On March 9, 2021, Officer Miles filed verified charges of discrimination and harassment based on race, and retaliation, which were cross-filed with the Montgomery County Office of Human Rights and with the Maryland Commission on Civil Rights, EEOC Charge No. 531-2021-01501.

14.     On March 1, 2022, Officer Miles filed a verified amendment to his charge of discrimination and harassment based on race, and retaliation, which were cross-filed with the Montgomery County Office of Human Rights and with the Maryland Commission on Civil Rights.

15.     On March 8, 2022, the Department of Justice issued a Right-to-Sue with respect to Plaintiff's EEOC Charges.

16.     On March 11, 2021, Officer Miles served a Local Government Tort Claims Notice in compliance with Maryland Code, Cts. & Jud. Proc., § 5-304 regarding Officer Miles' tort claims.

17.     The statutory prerequisites for bringing this action have been timely satisfied.

## FACTS COMMON TO ALL COUNTS

### *Defendants' Harassment of Officer Miles*

18.     On or about October 21, 2019, Office Miles began his employment with MNCPPC as a police officer.

19.     On or around March or April 2020, Officer Miles transferred to "Shift 5," reporting directly to Sergeant Stephanie Harvey ("Harvey").  Shift 5 primarily operated in Montgomery County, Maryland.

20.     Throughout the time that Plaintiff worked on Shift 5 under Defendant Harvey, she and other officers engaged in frequent and ongoing unwanted harassment based on race directed at African-Americans, and other non-white racial groups. Defendant Harvey openly participated in, condoned, and encouraged the harassment.  It was common practice for Defendant Harvey and other officers on the squad to make offensive, sarcastic, and demeaning comments about African Americans, and other people who were not white, which often included threats of violence against non-white citizens whom they were charged to protect.

5

21.     For example, shortly after Plaintiff transferred to Defendant Harvey's squad, she told Plaintiff that the other officers on the squad "thought he was Hispanic," or words to that effect. Defendant Harvey explained to Plaintiff that she told the other officers on Shift 5 that Plaintiff was "half white and half Black" or words to that effect. Defendant Harvey told Plaintiff that his squad mates "were worried they couldn't trust" Plaintiff "because he was Black," or words to that effect.

22.     Furthermore, Defendant Harvey and the rest of the squad had a text messaging group that Plaintiff was added to shortly after joining Shift 5. This text messaging group exchanged information regarding work assignments and other business related to their employment with Defendants. Defendant Harvey and other officers repeatedly made racist, hateful, and offensive comments on that text chain with impunity, which Defendant Harvey encouraged and participated in. These comments included racial and other offensive "jokes," condoning "civil war" or "race war" and extremist militia groups, and overt threats of violence against African American citizens. Such comments include, but are not limited to:

a. **When Plaintiff was added to the text chain, Defendant Harvey sent a photo of a Black child that said "Well Hello Motherfucker."**

b. **One time Defendant Harvey texted, "They want a race war…ok lets go. Miles ur on our side…at least half of u is!" Defendant Harvey stated about a race war, "Im ready. I need more ammo though;"**

c. **Another time, Defendant Harvey sent a text about some people who were fishing that said "Fucking Asians…Prob using them at their restaurants;"**

d. **When one officer sent a photo of an albino squirrel, Defendant Harvey replied "Squirrels gotta Nazi too;"**

e. **Defendant Harvey and others also frequently talked about murdering Black Lives Matter protesters. Defendant Harvey texted things like, "Time to start killing mother fuckers…" and "Well they got the Army out there sooooo….hopefully they will get to kill some people;" and "Kill em all," and "Kill the mother fuckers;"**

f. **Another time, Defendant Harvey stated, "Civil war getting ready to kick off" and another officer replied, "Boogaloo is coming" referencing a far right extremist militia;**

g. **Defendant Harvey also joked when another officer said that he wanted to "hang" himself, "well dont make a noose!" That officer responded, "Oh Jesus good call. I'll use the police tape instead."**

h. **Defendant Harvey referred to her own text messages stating, "Joke, don't turn these texts over to [Internal Affairs] and get me fired for hate speech!"**

i. **Another time Defendant Harvey texted, "If the deer is black, dont shoot it;" then other officers replied, "Pet the deer before you shoot. Good photo op," and "Use a choke hold;"**

j. **Another time an officer texted a photo of two Black men taking some selfies and Defendant Harvey replied sarcastically, "They're so cool. BLM;"**

k. **Defendant Harvey referred to a picture, that appeared to have been drawn by a child, of a heart that was posted on a telephone pole to support Black Lives Matter as, "Garbage Who would live in this joke of a county?? Oh yeah..." and referred to Takoma park as a "Shit hole;" Another officer referred to the same photo as "gang signs;"**

l.  **Other officers joked about "dealing with drunk eskimos having domestics;" and Defendant Harvey replied, "Whats [sic] the difference between an eskimo and a Hispanic;"**

m.  **Another officer texted a photo of a black man, a gun, sagging pants, and a black hoodie that said "hands up don't shoot" with the title "The Dindu Nuffin Starter Pack;"**

n.  **One time an officer joked about the Holocaust stating, "Guys, the political climate is to [sic] unstable to talk about pinning stars on specific people. Let's drop the hate speech," and Defendant Harvey laughed at the joke;**

o.  **Defendant Harvey and others also made frequent disparaging remarks about gay and trans people, stating things like, "Homos don't molest more than non homos," another officer said, "Gays are more likely to be rapists…"**

p.  **Defendant Harvey also frequently referred to all Hispanic people as "illegals," or speculated that they were "illegal" simply because they appeared Hispanic;**

q.  This is a non-exhaustive list of the offensive, racist, homophobic, and demeaning comments that pervaded the work environment.

23.  Defendant Harvey knew or should have known that her comments and conduct was illegal. Defendant Harvey knew or should have known that the conduct and comments of the officers she was supervising was illegal and harassing, but failed to take any steps to prevent and/or correct it. Indeed, Defendant Harvey admitted that she knew her conduct was illegal in at least one text message, wherein she stated: **"Joke, don't turn these texts over to [Internal Affairs] and get me fired for hate speech!"**

8

24.     **Another time, after referring to a "drunk Hispanic," in the text thread, Defendant Harvey stated, that she made that comment, "Because I'm racist…Fuck a misogynist too…or maybe a homophobe…Fuck it I check all the boxes[.]"**

25.     Officer Miles was insulted, offended, and distressed by the racially hostile work environment.

26.     The racist and offensive conduct was not limited to text messages.  For example, Defendant Harvey verbally stated on more than one occasion that she thought racism was "made up" or words to that effect.

27.     Defendant Harvey also openly mocked unconscious bias trainings that were being offered by MNCPPC, referring to it as "embarrassing," or words to that effect.  During one such meeting, Defendant Harvey argued openly with the diversity trainer, disrupting the class, which Officer Miles witnessed.

28.     Plaintiff is informed and believes that commanding officers knew, or should have known about Defendant Harvey's overtly racist comments and/or conduct.

29.     On another occasion around July 2020, Defendant Harvey and Officer Miles responded to a shooting incident.  At the scene, Defendant Harvey made offensive comments about the Black Lives Matter movement and got into a heated altercation with multiple witnesses.

30.     On another occasion, Officer Miles, the only Black officer on the squad, was sent to respond to an incident where graffiti referencing the Ku Klux Klan was drawn.  Defendant Harvey made jokes about the graffiti and its reference to the Ku Klux Klan, which was witnessed by Plaintiff, purposely minimizing the gravity of the hate speech, and dismissing the clearly offensive and racist conduct.

31.     On or around the end of June or July 2020, Defendant Harvey told Officer Miles and other Shift 5 members that she requested a meeting with Chief Darryl McSwain to complain that the Commission should not be supportive of Black Lives Matter protesters.

32.     On or around July 15, 2020, Chief McSwain, met with Shift 5.  During that meeting, Defendant Harvey and others complained that Defendants should not support Black Lives Matter protesters.  Following the meeting, Defendant Harvey referred to the Chief as a "liberal victimized Black guy," or words to that effect.

33.     On or about August 4, 2020, during a roll call meeting with the entire squad, Defendant Harvey referred to Officer Miles as "colored."   Referencing the meeting with the Chief regarding Harvey and other white officers' complaints regarding Defendants' position regarding the Black Lives' Matter protests, Defendant Harvey asked Officer Miles, **"Why didn't you speak up? You're the only half-colored on the squad."  The other officers laughed at Defendant Harvey's comment.**

34.     Following that incident, on or around August 2020, Officer Miles reported Defendant Harvey's behavior at the roll call meeting to Captain Jeffrey Coe.

35.     After Officer Miles' complaint, Defendant Harvey told Officer Miles that she thought calling him "colored" was the "politically correct" way to address him, or words to that effect.  Defendant Harvey also admonished Officer Miles for not going to her directly with his complaints instead of reporting her conduct to Captain Coe.

### *Defendants' Campaign of Retaliation Against Officer Miles Following His Complaints.*

36.     Following Officer Miles' complaints to MNCPPC regarding that hostile work environment, Officer Miles was immediately removed from the Shift 5 text message group.  The text message group was often used to discuss work assignments, and made it difficult for Officer

Miles to perform his job, as he was excluded from key communications between his Squad. Officer Miles was no longer invited to squad dinners and other work events. Officer Miles is informed and believes, and hereon alleges that he was the only member of Shift 5 that was removed from the text thread.

37.     In addition, following Officer Miles' complaints, Defendant Harvey and other members of the Shift 5 squad also began to isolate Officer Miles.  For example, Defendant Harvey stopped informing Officer Miles about work related matters, including changes to his work schedule.

38.     Despite Officer Miles' complaints, from on or around August 2020 through February 2021, Defendant Harvey and other members of the squad continued to make offensive and harassing comments about people who are not white at roll call meetings.  For example, Defendant Harvey continued to refer to Hispanic residents and citizens as "illegals."

39.     On or around late February of 2021, Officer Miles reported the continued harassment and retaliation to Lieutenant Kevin Coles in Internal Affairs.

40.     Following Officer Miles complaints, he continued to be further isolated by Defendants.

41.     Several days after Officer Miles' second report to Internal Affairs about Defendant Harvey, Defendant Harvey stated at another roll call meeting that she "hoped the department does not hire anyone with an accent" or words to that effect, and expressed her annoyance of a Prince George's County police officer because of his African accent; and that she was annoyed by the influx of immigrants coming in to the United States.

42.     Plaintiff is informed and believes that although Defendant Harvey may have been suspended from her position on or around March 2021, that she and other officers who engaged in

this racist vitriol remain employed by Defendants.  Plaintiff is informed and believes, and herein alleges, that several of the officers who sent racist text messages and made racist comments were promoted into supervisory roles following Plaintiff's complaints.

43.     For example when Defendant Harvey was removed as Sergeant of Shift 5, Corporal Sean Carroll was placed into the Acting Sergeant role with supervisory authority over Plaintiff. On days that Corporal Carroll was out, Corporal Christopher Bratburd was placed into the Acting Sergeant position with supervisory authority over Plaintiff.  Both Carroll and Bratburd participated in the racial harassment, including, but not limited to the text messages described herein.  Plaintiff is informed and believes that Corporal Zachary Sleigh was also elevated into a supervisory role following Plaintiff's complaints despite his participating in the racial harassment, including, but not limited to the text messages described herein.

44.     Defendants continued to retaliate against Officer Miles as described above, and he continued to be isolated from the squad.

45.     For example, on one occasion on or around May 2021, Officer Miles was responding to a high risk stop and called for backup, but is informed and believes that nobody from his Shift 5 immediately responded to his call.  Instead Montgomery County Police responded first.

46.     The deliberate failure to provide the proper backup that Park Police was duty-bound to provide to Officer Miles was not only a clear violation of safety protocols and policies implemented by the Park Police and MNCPPC,  but an act of retaliation against Officer Miles for complaining to management about Defendant Harvey and the squad's racially hostile environment. These acts of retaliation put Officer Miles' safety and life at risk.

47.     Additionally, on or around March 2021, following Plaintiffs' complaint to the EEOC, while at the same time elevating officers who engaged in the racial harassment, Defendant MCNPPC began to pressure Officer Miles to transfer out of Shift 5, expressing a desire to kick him out of the squad even though Officer Miles repeatedly told management he wished to remain on Shift 5.

48.     As a result of Defendants' failure to remove the officers who harassed Officer Miles from Shift 5 and/or take other appropriate remedial measure to prevent and/or correct the harassment, discrimination, and/or retaliation, on or around November 2021 Officer Miles was involuntarily transferred to another, less desirable night shift.

49.     Plaintiff is informed and believes that throughout his employment, Defendants failed to prevent and/or correct the harassment, discrimination, and/or retaliation, and continue to fail to prevent or correct the harassment, discrimination, and/or retaliation.

<u>COUNT I</u>
**<u>Hostile Work Environment</u>**
**In Violation of Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e-2(b)**
**(By Plaintiff Against Defendant MNCPPC)**

50.     Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as if fully restated herein.

51.     By the acts and omissions described above, Defendant subjected Officer Miles to disparate terms and conditions of his employment on the basis of race in violation of Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e-2(b).

52.     At all relevant times herein, Defendant MNCPPC was Plaintiff's employer.

53.     As an employee of Defendant MNCPPC, Plaintiff was entitled to the protections of Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. §§ 2000(e), *et seq.*, which

prohibits discrimination in the workplace based on the basis of a person's race, including, but not limited to, through the creation of a hostile work environment based on Plaintiff's race.

54.     Defendant Harvey was at most relevant times Plaintiff's supervisor as alleged above.

55.     In perpetrating the above-described actions, Defendant MNCPPC subjected Plaintiff to severe and/or pervasive racial harassment as alleged above such that it altered the terms and/or conditions of Plaintiff's employment.

56.     Defendant MNCPPC knew or should have known about the severe and/or pervasive comments and conduct of Defendant Harvey and/or Plaintiff's other supervisors and/or coworkers, including, but not limited to Corporals Carroll, Bratburd, and/or Sleigh.  Further, Defendant Harvey, Plaintiff's supervising officer, participated in and encouraged the severe and/or pervasive harassment on the basis of race as alleged herein.  Plaintiff is informed and believes that his commanding officers knew and/or should have known about the hostile work environment, but failed to take appropriate steps to prevent and/or correct the harassment, instead, promoting some of the officers that engaged in the harassment.

57.     The conduct was unwelcomed by Plaintiff.

58.     A reasonable person in Plaintiff's circumstances would consider the work environment hostile and/or abusive and Plaintiff did consider the work environment hostile and abusive.

59.     Defendant MNCPPC's and its agents' conduct, including but not limited to the conduct of Defendant Harvey, directly and proximately caused the injuries, harm, and damages to Plaintiff.

60.     As a direct and proximate result of Defendant MNCPPC's and its agents' conduct, including but not limited to the conduct of Defendant Harvey, Plaintiff has been caused to suffer and did suffer from injuries, including but not limited to economic losses, emotional and mental distress including but not limited to anguish, embarrassment, humiliation, and damage to his reputation.

61.     There is a likelihood of Plaintiff suffering substantial and immediate irreparable harm as a result of the ongoing harassment, discrimination, and/or retaliation and Defendants failure to take steps to prevent and/or correct it.  There exists no other remedy to adequately address this threat of harm, as such Plaintiff seeks injunctive relief as more fully described below.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

### COUNT II
### Retaliation
**Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e-3(a)**
**(Plaintiff Against Defendant MNCPPC)**

62.     Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as if fully restated herein.

63.     At all relevant times herein, Defendant MNCPPC was Plaintiff's employer.

64.     As an employee of Defendant MNCPPC, Plaintiff was entitled to the protections of Title VII of the Civil Rights Act of 1964, ("Title VII"), 42 U.S.C. §§ 2000e-3(a), *et seq.*, which prohibits an employer from taking retaliatory adverse action against an employee because the employee engaged in a statutorily protected activity, including opposing any unlawful employment practice, or because they have assisted and/or participated in any manner in an investigation.

65.     As described more fully above, Plaintiff engaged in protected activities including, but not limited to, making repeated complaints of harassment, discrimination, and/or retaliation to

Defendants, and by assisting with and/or otherwise participating in and/or assisting with the investigation of such complaints of harassment, discrimination, and/or retaliation.

66.    As a result of Plaintiff's participation in these protected activities, Defendant MNCPPC subjected him to adverse employment actions, including but not limited to: transferring Plaintiff to a less desirable night shift; isolating Plaintiff from the squad; failing to provide timely backup to Plaintiff; failing to communicate employment matters to Plaintiff; and/or promoting supervising officers who participated in the harassment into supervisory roles over Plaintiff, including but not limited to Corporals Carroll and/or Bratburd.

67.    A reasonable employee in Plaintiff's position would have found the conduct by Defendants materially adverse in that it would dissuade a reasonable worker from making or supporting a charge of discrimination.

68.    Defendant MNCPPC's and its agents' conduct, including but not limited to the conduct of Defendant Harvey, directly and proximately caused the injuries, harm, and damages to Plaintiff.

69.    As a direct and proximate result of Defendant MNCPPC's and its agents' conduct, including but not limited to the conduct of Defendant Harvey, Plaintiff has been caused to suffer and did suffer from injuries, including but not limited to economic losses, emotional and mental distress including but not limited to anguish, embarrassment, humiliation, and damage to his reputation.

70.    There is a likelihood of Plaintiff suffering substantial and immediate irreparable harm as a result of the ongoing harassment, discrimination, and/or retaliation and Defendants failure to take steps to prevent and/or correct it.  There exists no other remedy to adequately address this threat of harm, as such Plaintiff seeks injunctive relief as more fully described below.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

### COUNT III
### Race Discrimination
**In Violation of the Fourteenth Amendment and 42 U.S.C. § 1983**
**(By Plaintiff Against Defendant MCNPPC and Defendant Harvey in her Official and Individual Capacities)**

71.     Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as if fully restated herein.

72.     The Fourteenth Amendment to the United States Constitution guarantees citizens equal protection of the laws of the United States, with violations thereof giving rise to claims for relief under 42 U.S.C. § 1983.

73.     42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws" by persons acting under the color of law.  The right to be free from racial discrimination in employment and retaliation for assertion of one's civil rights were both clear and well-established rights, known to each of the Defendants in this action throughout the time period of the allegations of this Complaint.

74.     By the acts and omissions described above, Defendants, acting under color of state law, maintained a pattern and practice of racial harassment, discrimination, and retaliation, creating a hostile and oppressive work environment.

75.     At all times mentioned herein, Defendant MNCPPC maintained customs, policies, and/or practices that proximately caused and continue to cause, and were likely to lead and continue to lead to the violation of Plaintiff's constitutional and civil rights resulting in adverse employment actions against Plaintiff.  These acts, omissions, customs, policies, and practices include, acts of discrimination and harassment that include, but are not limited to:

a.      Defendant's continuing failure to prevent, correct, and eliminate the harassing and discriminatory practices that led to the hostile work environment.  The discrimination and harassment was known to Defendant MNCPPC, and its policy-making leaders at all times mentioned herein;

b.      The failure of Defendant MNCPPC to fully and adequately prevent, correct, and discipline white officers who engaged in acts of racism, and instead promote some of those same officers, while Officer Miles was forced to transfer to a less-desirable night shift;

c.      Defendants engaged and continue to engage in acts of retaliation against Plaintiff as alleged above;

d.      Defendants maintain, facilitate and condone a severe and pervasive hostile work environment that altered the terms and conditions of Plaintiff's employment.

76.      The Defendants have, by the actions described herein, acted under the color of state law to discriminate against Plaintiff on the basis of race, thereby depriving him of rights, privileges, and immunities secured to him by the Constitution and laws of the United States and the State of Maryland, and in direct violation of the Fourteenth Amendment to the United States Constitution. Such injury has been and will continue to be irreparable.

77.      At all times alleged herein, Defendant Harvey knew that both she and other officers, including, but not limited to Carroll, Bratburd, and/or Sleigh were engaging in conduct that posed a pervasive and unreasonable risk of constitutional injury.  Defendant Harvey's response to, and participation in the harassing conduct and establishment of the hostile work environment as alleged above shows deliberate indifference and/or tacit authorization of the alleged offensive practices that at all times posed an unreasonable risk of harm of constitutional injury.

78.     As a direct and proximate result of these acts, Plaintiff was, and continues to be deprived of his civil rights, and suffered and continues to suffer economic losses, as well as emotional distress, humiliation, embarrassment, and damage to his reputation.

79.     The actions of Defendants, in depriving Plaintiff of his constitutional and civil rights, were willful and malicious and constitute a continuing violation of the Fourteenth Amendment.

80.     As a direct and proximate result of Defendants' retaliatory acts, Officer Miles has been and continues to be deprived of his civil rights, and suffered and continues to suffer economic losses, as well as emotional distress, humiliation, embarrassment, and damage to his reputation.

81.     There is a likelihood of Plaintiff suffering substantial and immediate irreparable harm as a result of the ongoing harassment, discrimination, and/or retaliation and Defendants failure to take steps to prevent and/or correct it.  There exists no other remedy to adequately address this threat of harm, as such Plaintiff seeks injunctive relief as more fully described below.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

**COUNT IV**
**Retaliation**
**In Violation of the Fourteenth Amendment and 42 U.S.C. § 1983**
**(By Plaintiff Against Defendant MCNPPC and Defendant Harvey in her Official and Individual Capacities)**

82.     Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as if fully restated herein.

83.     The Fourteenth Amendment to the United States Constitution guarantees citizens equal protection of the laws of the United States, with violations thereof giving rise to claims for relief under 42 U.S.C. § 1983.

84.     42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws" by persons acting under the color of law.  The right to be free from racial discrimination in employment and retaliation for assertion of one's civil rights were both clear and well-established rights, known to each of the Defendants in this action throughout the time period of the allegations of this Complaint.

85.     By the acts and omissions described above, Defendants, acting under color of state law, maintained a pattern and practice of racial harassment, discrimination, and retaliation, creating a hostile and oppressive work environment.

86.     As described more fully above, Plaintiff engaged in protected activities including, but not limited to, making repeated complaints of harassment, discrimination, and/or retaliation to Defendants, and by assisting with and/or otherwise participating in and/or assisting with the investigation of such complaints of harassment, discrimination, and/or retaliation.

87.     As a result of Plaintiff's participation in these protected activities, Defendants subjected him to adverse employment actions, including but not limited to: transferring Plaintiff to a less desirable night shift; isolating Plaintiff from the squad; failing to provide timely backup to Plaintiff; failing to communicate employment matters to Plaintiff; and/or promoting supervising officers who participated in the harassment into supervisory roles over Plaintiff, including but not limited to Corporals Carroll and/or Bratburd.

88.     A reasonable employee in Plaintiff's position would have found the conduct by Defendants materially adverse in that it would dissuade a reasonable worker from making or supporting a charge of discrimination.

89.     The Defendants have, by the actions described herein, acted under the color of state law to discriminate against Plaintiff on the basis of race, thereby depriving him of rights, privileges,

and immunities secured to him by the Constitution and laws of the United States and the State of Maryland, and in direct violation of the Fourteenth Amendment to the United States Constitution. Such injury has been and will continue to be irreparable.

90.     At all times alleged herein, Defendant Harvey knew that both she and other officers, including, but not limited to Carroll, Bratburd, and/or Sleigh were engaging in conduct that posed a pervasive and unreasonable risk of constitutional injury.  Defendant Harvey's response to, and participating in the harassing conduct and establishment of the hostile work environment as alleged above shows deliberate indifference and/or tacit authorization of the alleged offensive practices that at all times posed an unreasonable risk of harm of constitutional injury.

91.     As a direct and proximate result of these acts, Plaintiff was, and continues to be deprived of his civil rights, and suffered and continues to suffer economic losses, as well as emotional distress, humiliation, embarrassment, and damage to his reputation.

92.     The actions of Defendants, in depriving Plaintiff of his constitutional and civil rights, were willful and malicious and constitute a continuing violation of the Fourteenth Amendment.

93.     As a direct and proximate result of Defendants' retaliatory acts, Officer Miles has been and continues to be deprived of his civil rights, and has suffered and continues to suffer severe emotional distress, humiliation and embarrassment.

94.     There is a likelihood of Plaintiff suffering substantial and immediate irreparable harm as a result of the ongoing harassment, discrimination, and/or retaliation and Defendants failure to take steps to prevent and/or correct it.  There exists no other remedy to adequately address this threat of harm, as such Plaintiff seeks injunctive relief as more fully described below.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

**COUNT V**
**Race Discrimination – Hostile Work Environment**
**In Violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983**
**(By Plaintiff Against Defendant MCNPPC and Defendant Harvey in her Official and Individual Capacities)**

95.     Plaintiff Officer Miles incorporates and re-alleges the foregoing paragraphs as if fully set forth herein.

96.     42 U.S.C. § 1981 guarantees that all persons shall have the right to make and enforce contracts, including employment contracts free from all forms of discrimination on the basis of race.

97.     42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws" by persons acting under the color of law.  The right to be free from racial discrimination and harassment in employment and retaliation for assertion of one's civil rights were clear and well-established rights, known to each of the Defendants in this action throughout the time period of the allegations of this Complaint.

98.     By the acts and omissions described above, Defendants, acting under color of state law, maintained a pattern and practice of race discrimination, creating a hostile and oppressive work environment, and otherwise retaliated against Plaintiff as alleged above for his complaints.

99.     Defendants' conduct was motivated by race, and was not welcomed by Plaintiff.

100.     Defendants' conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment hostile or abusive, and Plaintiff did find his work environment to be hostile and abusive as a result of Defendants' conduct.

101.    The Defendants have, by the actions described herein, acted under the color of state law to discriminate against Plaintiff on the basis of race, thereby depriving him of rights, privileges, and immunities secured to him by 42 U.S.C. § 1981. Such injury has been and will continue to be irreparable.

102.    As described above, Defendants knowingly and intentionally maintained a racially discriminatory, hostile, and oppressive work environment, and knowingly and intentionally retaliated against Plaintiff because of his complaints.

103.    As a direct and proximate result of these acts, Plaintiff was, and continues to be deprived of his civil rights, and suffered and continues to suffer economic losses, as well as emotional distress, humiliation, embarrassment, and damage to his reputation.

104.    Defendants' conduct was willful and malicious and constitute a continuing violation of 42 U.S.C. § 1981.

105.    As a direct and proximate result of Defendants' retaliatory acts, Officer Miles has been and continues to be deprived of his civil rights, and has suffered and continues to suffer severe emotional distress, humiliation and embarrassment.

106.    There is a likelihood of Plaintiff suffering substantial and immediate irreparable harm as a result of the ongoing harassment, discrimination, and/or retaliation and Defendants failure to take steps to prevent and/or correct it.  There exists no other remedy to adequately address this threat of harm, as such Plaintiff seeks injunctive relief as more fully described below.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

<u>**COUNT VI**</u>
<u>**Retaliation**</u>
**In Violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983**
**(By Plaintiff Against Defendant MCNPPC and Defendant Harvey in her Official and**
**Individual Capacities)**

107.    Plaintiff Officer Miles incorporates and re-alleges the foregoing paragraphs as if fully set forth herein.

108.    42 U.S.C. § 1981 guarantees that all persons shall have the right to make and enforce contracts, including employment contracts free from all forms of discrimination on the basis of race and retaliation for engaging in protected activities.

109.    42 U.S.C. § 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws" by persons acting under the color of law.  The right to be free from racial discrimination in employment and retaliation for assertion of one's civil rights were both clear and well-established rights, known to each of the Defendants in this action throughout the time period of the allegations of this Complaint.

110.    By the acts and omissions described above, Defendants, acting under color of state law, maintained a pattern and practice of race discrimination, creating a hostile and oppressive work environment, and otherwise retaliated against Plaintiff as alleged above for his complaints.

111.    The Defendants have, by the actions described herein, acted under the color of state law to discriminate against Plaintiff on the basis of race, thereby depriving him of rights, privileges, and immunities secured to him by 42 U.S.C. § 1981. Such injury has been and will continue to be irreparable.

112.    As described more fully above, Plaintiff engaged in protected activities including, but not limited to, making repeated complaints of harassment, discrimination, and/or retaliation to

Defendants, and by assisting with and/or otherwise participating in and/or assisting with the investigation of such complaints of harassment, discrimination, and/or retaliation.

113.    As a direct and proximate result of Plaintiff's participation in these protected activities, Defendants subjected him to adverse employment actions, including but not limited to: transferring Plaintiff to a less desirable night shift; isolating Plaintiff from the squad; failing to provide timely backup to Plaintiff; failing to communicate employment matters to Plaintiff; and/or promoting supervising officers who participated in the harassment into supervisory roles over Plaintiff, including but not limited to Corporals Carroll and/or Bratburd.

114.    A reasonable employee in Plaintiff's position would have found the conduct by Defendants materially adverse in that it would dissuade a reasonable worker from making or supporting a charge of discrimination.

115.    As described above, Defendants knowingly and intentionally maintained a racially discriminatory, hostile, and oppressive work environment, and knowingly and intentionally retaliated against Plaintiff because of his complaints.

116.    As a direct and proximate result of these acts, Plaintiff was, and continues to be deprived of his civil rights, and suffered and continues to suffer economic losses, as well as emotional distress, humiliation, embarrassment, and damage to his reputation.

117.    Defendants' conduct was willful and malicious and constitute a continuing violation of 42 U.S.C. § 1981.

118.    As a direct and proximate result of Defendants' retaliatory acts, Officer Miles has been and continues to be deprived of his civil rights, and has suffered and continues to suffer severe emotional distress, humiliation and embarrassment.

119.     There is a likelihood of Plaintiff suffering substantial and immediate irreparable harm as a result of the ongoing harassment, discrimination, and/or retaliation and Defendants failure to take steps to prevent and/or correct it.  There exists no other remedy to adequately address this threat of harm, as such Plaintiff seeks injunctive relief as more fully described below.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

**COUNT VII**
**Race Discrimination – Hostile Work Environment**
**In Violation of 42 U.S.C. § 1981**
**(By Plaintiff Against Defendant Harvey As an Individual)**

120.     Plaintiff Officer Miles incorporates and re-alleges the foregoing paragraphs as if fully set forth herein.

121.     42 U.S.C. § 1981 guarantees that all persons shall have the right to make and enforce contracts, including employment contracts free from all forms of discrimination on the basis of race.

122.     Defendant Harvey's conduct was motivated by race, and was not welcomed by Plaintiff.

123.     Defendant Harvey's conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment hostile or abusive, and Plaintiff did find his work environment to be hostile and abusive as a result of Defendant Harvey's conduct.

124.     As described above, Defendant Harvey knowingly and intentionally maintained a racially discriminatory, hostile, and oppressive work environment, and knowingly and intentionally retaliated against Plaintiff because of his complaints.

125.     In engaging in the acts and omissions alleged herein, Defendant Harvey acted knowingly, intentionally, maliciously, and/or with reckless indifference to Plaintiff's rights thereby entitling Plaintiff to an award of punitive damages against Defendant Harvey.

126.     As a direct and proximate result of Defendant Harvey's acts and omissions, Plaintiff was, and continues to be deprived of his civil rights, and suffered and continues to suffer economic losses, as well as emotional distress, humiliation, embarrassment, and damage to his reputation.

127.     There is a likelihood of Plaintiff suffering substantial and immediate irreparable harm as a result of the ongoing harassment, discrimination, and/or retaliation and Defendants failure to take steps to prevent and/or correct it.  There exists no other remedy to adequately address this threat of harm, as such Plaintiff seeks injunctive relief as more fully described below.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

### COUNT VIII
### Hostile Work Environment
### In Violation of Md. Code, State Gov't § 20-606(a)
### (By Plaintiff Against Defendant MNCPPC)

128.     Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as if fully restated herein.

129.     By the acts and omissions described above, Defendant subjected Officer Miles to disparate terms and conditions of his employment on the basis of race in violation Md. Code, State Gov't § 20-606(a).

130.     At all relevant times herein, Defendant MNCPPC was Plaintiff's employer.

131.     As an employee of Defendant MNCPPC, Plaintiff was entitled to the protections of Md. Code, State Gov't § 20-606(a), which prohibits discrimination in the workplace based on the

basis of a person's race, including, but not limited to, through the creation of a hostile work environment based on Plaintiff's race.

132.    Defendant Harvey was at most relevant times Plaintiff's supervisor as alleged above.

133.    In perpetrating the above-described actions, Defendant MNCPPC subjected Plaintiff to severe and/or pervasive racial harassment as alleged above such that it altered the terms and/or conditions of Plaintiff's employment.

134.    Defendant MNCPPC knew or should have known about the severe and/or pervasive comments and conduct of Defendant Harvey and/or Plaintiff's other supervisors and/or coworkers. Further, Defendant Harvey, Plaintiff's supervising officer, participated in and encouraged the severe and/or pervasive harassment on the basis of race as alleged herein.  Plaintiff is informed and believes that his commanding officers knew and/or should have known about the hostile work environment, but failed to take appropriate steps to prevent and/or correct the harassment, instead, promoting some of the officers that engaged in the harassment.

135.    The conduct was unwelcomed by Plaintiff.

136.    A reasonable person in Plaintiff's circumstances would consider the work environment hostile and/or abusive, and Plaintiff did consider the work environment hostile and abusive.

137.    Defendant MNCPPC's and its agents' conduct, including but not limited to the conduct of Defendant Harvey, directly and proximately caused the injuries, harm, and damages to Plaintiff.

138.    In engaging in the acts and omissions alleged herein, Defendant Harvey acted knowingly, intentionally, maliciously, and/or with reckless indifference to Plaintiff's rights.

139.     As a direct and proximate result of Defendant MNCPPC's acts and omissions, Plaintiff was, and continues to be deprived of his civil rights, and suffered and continues to suffer economic losses, as well as emotional distress, humiliation, embarrassment, and damage to his reputation.

140.     There is a likelihood of Plaintiff suffering substantial and immediate irreparable harm as a result of the ongoing harassment, discrimination, and/or retaliation and Defendants failure to take steps to prevent and/or correct it.  There exists no other remedy to adequately address this threat of harm, as such Plaintiff seeks injunctive relief as more fully described below.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

**COUNT IX**
**Retaliation**
**In Violation of Md. Code, State Gov't § 20-606(f)**
**(Plaintiff Against Defendant MNCPPC)**

141.     Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as if fully restated herein.

142.     At all relevant times herein, Defendant MNCPPC was Plaintiff's employer.

143.     As an employee of Defendants MNCPPC, Plaintiff was entitled to the protections of Md. Code, State Gov't § 20-606(f) which prohibits an employer from taking retaliatory adverse action against an employee because the employee engaged in a statutorily protected activity, including opposing any unlawful employment practice, or because they have assisted and/or participated in any manner in an investigation.

144.     As described more fully above, Plaintiff engaged in protected activities including, but not limited to, making repeated complaints of harassment, discrimination, and/or retaliation to

29

Defendants, and by assisting with and/or otherwise participating in the investigation of such complaint of harassment, discrimination, and/or retaliation.

145.    As a result of Plaintiff's participation in these protected activities, Defendant subjected him to adverse employment actions, including but not limited to: transferring Plaintiff to a less desirable night shift, isolating Plaintiff from the squad, failing to provide timely backup to Plaintiff, failing to communicate employment matters to Plaintiff.

146.    A reasonable employee in Plaintiff's position would have found the conduct by Defendants materially adverse in that it would dissuade a reasonable worker from making or supporting a charge of discrimination.

147.    Defendant MNCPPC's and its agents' conduct, including but not limited to the conduct of Defendant Harvey, directly and proximately caused the injuries, harm, and damages to Plaintiff.

148.    In engaging in the acts and omissions alleged herein, Defendant Harvey acted knowingly, intentionally, maliciously, and/or with reckless indifference to Plaintiff's rights.

149.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff was, and continues to be deprived of his civil rights, and suffered and continues to suffer economic losses, as well as emotional distress, humiliation, embarrassment, and damage to his reputation.

150.    There is a likelihood of Plaintiff suffering substantial and immediate irreparable harm as a result of the ongoing harassment, discrimination, and/or retaliation and Defendants failure to take steps to prevent and/or correct it.  There exists no other remedy to adequately address this threat of harm, as such Plaintiff seeks injunctive relief as more fully described below.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

## COUNT X
### Hostile Work Environment
### In Violation of Montgomery County Code § 27-19
### (By Plaintiff Against All Defendants)

151.    Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as if fully restated herein.

152.    By the acts and omissions described above, Defendants subjected Officer Miles to disparate terms and conditions of his employment on the basis of race in violation of Montgomery County Code § 27-19.

153.    At all relevant times herein, Defendants MNCPPC was Plaintiff's employer.

154.    As an employee of Defendants MNCPPC, Plaintiff was entitled to the protections of Montgomery County Code § 27-19, which prohibits discrimination in the workplace based on the basis of a person's race, including, but not limited to, through the creation of a hostile work environment based on Plaintiff's race.

155.    Defendant Harvey was at most relevant times Plaintiff's supervisor as alleged above.

156.    In perpetrating the above-described actions, Defendants subjected Plaintiff to severe and/or pervasive racial harassment as alleged above such that it altered the terms and/or conditions of Plaintiff's employment.

157.    In perpetrating the above-described action, Defendants harassed Plaintiff because the conduct was based upon Plaintiffs race and submission to the conduct was made either explicitly or implicitly a term or condition of Plaintiff's employment; submission ore rejection of the conduct was used as a basis for employment decision concerning Plaintiff; the conduct had the purpose or effect of unreasonably interfering with Plaintiff's work performance or otherwise created a working environment that Plaintiff perceived as abusive or hostile; and a reasonable

31

victim of the conduct Plaintiff was subjected to would consider the conduct to be more than a petty slight, trivial inconvenience, or minor annoyance.

158.     Defendant MNCPPC knew or should have known about the severe and/or pervasive comments and conduct of Defendant Harvey and/or Plaintiff's other supervisors and/or coworkers. Further, Defendant Harvey, Plaintiff's supervising officer, participated in assisted, compelled, and/or coerced the severe and/or pervasive harassment on the basis of race as alleged herein.

159.     The conduct was unwelcomed by Plaintiff, and Plaintiff considered the conduct to be more than a petty slight, trivial inconvenience, or minor annoyance.

160.     A reasonable person in Plaintiff's circumstances would consider the work environment hostile and/or abusive.

161.     Defendants' and their agents' conduct, including but not limited to the conduct of Defendant Harvey, directly and proximately caused the injuries, harm, and damages to Plaintiff.

162.     In engaging in the acts and omissions alleged herein, Defendant Harvey acted knowingly, intentionally, maliciously, and/or with reckless indifference to Plaintiff's rights.

163.     As a direct and proximate result of Defendants and their agents' conduct, including but not limited to the conduct of Defendant Harvey, Plaintiff has been caused to suffer and did suffer from injuries, including but not limited to economic losses, emotional and mental distress including but not limited to anguish, embarrassment, humiliation, and damage to his reputation.

164.     There is a likelihood of Plaintiff suffering substantial and immediate irreparable harm as a result of the ongoing harassment, discrimination, and/or retaliation and Defendants failure to take steps to prevent and/or correct it.  There exists no other remedy to adequately address this threat of harm, as such Plaintiff seeks injunctive relief as more fully described below.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

**COUNT XI**
**Retaliation**
**In Violation of Montgomery County Code § 27-19**
**(Plaintiff Against Defendant and MNCPPC)**

165.    Plaintiff adopts and incorporates each and every allegation contained in each of the foregoing paragraphs as if fully restated herein.

166.    At all relevant times herein, Defendant MNCPPC was Plaintiff's employer.

167.    As an employee of Defendant MNCPPC, Plaintiff was entitled to the protections of Montgomery County Code § 27-19 which prohibits an employer from taking retaliatory adverse action against an employee because the employee engaged in a statutorily protected activity, including opposing any unlawful employment practice, or because they have assisted and/or participated in any manner in an investigation.

168.    As described more fully above, Plaintiff engaged in protected activities including, but not limited to, making repeated complaints of harassment, discrimination, and/or retaliation to Defendants, and by assisting with and/or otherwise participating in the investigation of such complaint of harassment, discrimination, and/or retaliation.

169.    As a result of Plaintiff's participation in these protected activities, Defendants subjected him to adverse employment actions, including but not limited to: transferring Plaintiff to a less desirable shift, isolating Plaintiff from the squad, failing to provide timely backup to Plaintiff, failing to communicate employment matters to Plaintiff.

170.    A reasonable employee in Plaintiff's position would have found the conduct by Defendants materially adverse in that it would dissuade a reasonable worker from making or supporting a charge of discrimination.

33

171.     Defendants and their agents' conduct, including but not limited to the conduct of Defendant Harvey, directly and proximately caused the injuries, harm, and damages to Plaintiff.

172.     In engaging in the acts and omissions alleged herein, Defendant Harvey acted knowingly, intentionally, maliciously, and/or with reckless indifference to Plaintiff's rights.

173.     As a direct and proximate result of Defendants and their agents' conduct, including but not limited to the conduct of Defendant Harvey, Plaintiff has been caused to suffer and did suffer from injuries, including but not limited to economic losses, emotional and mental distress including but not limited to anguish, embarrassment, humiliation, and damage to his reputation.

174.     There is a likelihood of Plaintiff suffering substantial and immediate irreparable harm as a result of the ongoing harassment, discrimination, and/or retaliation and Defendants failure to take steps to prevent and/or correct it.  There exists no other remedy to adequately address this threat of harm, as such Plaintiff seeks injunctive relief as more fully described below.

WHEREFORE, Plaintiff demands damages, injunctive, and other relief as requested below.

## **PRAYER FOR RELIEF**

WHEREFORE, as relief for the causes of action set forth in Counts I-XI hereof, Plaintiff prays as follows:

A.     That this Count enters an order declaring that the acts and practices of Defendants violate the laws of the United States, the State of Maryland, and Montgomery County, MD;

B.     Issue a permanent injunction that (i) prohibits Defendant MNCPPC, its officers, agents, employees, and successors from engaging in the discriminatory, harassing,

and retaliatory employment practices complained of herein; and (ii) imposes a prohibition of similar conduct in the future by;

     (i)     Requiring three-year monitoring of all employment complaints by Defendant MNCPPC to prevent any further racial discrimination in employment, including the hiring and training of new and current officers;

     (ii)     Ordering Defendant MNCPPC to refrain from retaliating against Plaintiff for making complaints about discrimination, harassment, and/or retaliation by Defendants;

     (iii)     Appointing an independent monitor to ensure fairness and compliance with the orders of this Court;

     (iv)     Ordering Defendant MNCPPC to terminate Defendant Harvey's employment with Defendant MNCPPC because of her violations of the clearly established laws of the United States, the State of Maryland, and Montgomery County.

C.     Award Plaintiff economic and compensatory damages, plus interest, in an amount to be proven at trial sufficient to redress the harms that he suffered, including economic, physical and emotional distress, humiliation, embarrassment, and mental anguish;

D.     Award Plaintiff appropriate punitive damages, against Defendant Harvey in her individual capacity for the applicable causes of action, in an amount to be proven at trial that would punish Defendant Harvey for her knowing, intentional, willful, and reckless disregard of Plaintiff's clearly established rights as alleged herein and enter any and all

injunctive decrees and relief necessary to effectively prevent all Defendant Harvey from engaging in similar unlawful racial harassment, discrimination, and retaliation in in the future;

      E.      Award Plaintiff an additional amount to account for any taxes he may be called upon to pay in relation to these awards herein;

      F.      Award all pre-judgment interest allowed by law;

      G.      Award Plaintiff reasonable attorneys' fees and costs;  and

      H.      Award such other and further relief in any form that this Honorable Court deems just and proper under the facts and circumstances as proved at trial.

Dated: March 14, 2022               Respectfully submitted,

                                 _____/s/_____

Erika Jacobsen White, Esq. (Bar No. 21815)
Jay P. Holland, Esq. (Bar No. 06015)
JOSEPH, GREENWALD & LAAKE, P.A.
6404 Ivy Lane, Suite
400 Greenbelt, MD 20770
Tel: (301) 220-2200
Fax: (301) 220-1214
ewhite@jgllaw.com
jholland@jgllaw.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| MARK MILES<br>2478 Dunmore Ct.<br>Frederick, Maryland 21702<br><br>Plaintiff,<br><br>v.<br><br>MARYLAND-NATIONAL CAPITAL PARK<br>AND PLANNING COMMISSION,<br><u>Serve</u>:<br>Attn: Elizabeth Adams<br>6611 Kenilworth Avenue<br>Riverdale, MD 20737<br><br>and<br><br>STEPHANIE HARVEY, as an individual, and<br>in her official capacity,<br><u>Serve</u>: Stephanie Harvey<br>2821 Moores Plains Blvd.<br>Upper Marlboro, MD 20774<br><br>Defendants. | **Case No.:** _____<br><br>**JURY TRIAL DEMANDED** |

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by a jury of his peers on all counts so triable.

Dated: March 14, 2022                    Respectfully submitted,

                                   _____/s/_____
                                   Erika Jacobsen White, Esq. (Bar No. 21815)
                                   Jay P. Holland, Esq. (Bar No. 06015)
                                   JOSEPH, GREENWALD & LAAKE, P.A.
                                   6404 Ivy Lane, Suite 400
                                   Greenbelt, MD 20770

Tel: (301) 220-2200
Fax: (301) 220-1214
ewhite@jgllaw.com
jholland@jgllaw.com